**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 15, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.                                                                   No. 05-2150

KENDALL SHANNON BRUCE,

Defendant-Appellant.

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-04-1896 JP)**

---

Michael A. Keefe, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Presiliano Torrez, Assistant United States Attorney (David C. Iglesias, United States Attorney, Kyle T. Nayback, Assistant United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **MURPHY**, **HOLLOWAY**, and **HARTZ**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

# I. INTRODUCTION

A grand jury returned a three-count indictment against Kendall Bruce, accusing him of two counts of assault with a dangerous weapon with intent to do bodily harm and one count of assault resulting in serious bodily injury. 18 U.S.C. §§ 113(a)(3), 113(a)(6), 1153(a). A jury found Bruce guilty of all three counts. Bruce claims he is entitled to a new trial because the district court failed to instruct the jury on the lesser-included offense of simple assault. Alternatively, assuming his convictions are affirmed, Bruce asserts he is entitled to be resentenced because the district court imposed a special term of supervised release without first providing the notice required by Fed. R. Crim. P. 32(c)(1).

This court exercises jurisdiction over Bruce's appeal pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. The district court did not commit plain error when it failed to *sua sponte* instruct the jury on the lesser-included offense of simple assault. Thus, we **affirm** Bruce's convictions. Because the district court failed to provide Bruce reasonable notice of its intent to impose as a special condition of supervised release that Bruce consent to suspicionless searches of his person and property, however, we **remand** to the district court to vacate Bruce's sentence and resentence him in accord with Fed. R. Crim. P. 32(c)(1).

## II. BACKGROUND

*A. Factual Background*

The victim of the assaults underlying the charges in this case was Hannalita Long, Bruce's girlfriend and the mother of his four children. Bruce and Long lived together in Prewitt, New Mexico, a town within the boundaries of the Navajo Reservation. On the night of June 25, 2004, Bruce and Long socialized with friends and family; both drank large amounts of alcohol. Long spent the night at her mother's home, rather than at the trailer she shared with Bruce, because she and Bruce had been arguing during the course of the evening.

The next morning, Bruce and Long began to argue when Bruce refused to take the couple's son, Kendall Jr., to Albuquerque to see a movie as promised. The argument involved physical violence and eventually escalated to the point that Long began to pack her belongings to leave the couple's home. Bruce repeatedly apologized to Long and specifically apologized for pushing her and throwing a lighter at her. Long refused to accept the apologies, insisted she was going to leave and move in with her mother, and called Bruce a liar because he had previously said he would not hit her again.

When Long refused to accept Bruce's apologies, he grabbed her by her hair and banged her head into a weight bench. Long fell to the floor, and Bruce repeatedly punched and kicked her. When Kendall Jr. intervened and attempted to stop the beating, Bruce continued kicking Long and told Kendall Jr., "Look at

your mom now.  Your mom doesn't look so pretty anymore.  She looks all fucked up now, doesn't she?"  While she was lying on the floor, Long saw Bruce grab a small weight.  Although Long did not actually see Bruce swing the weight, she thought he hit her with it.

At some point during the beating, Bruce dragged Long to the living room of the trailer.  Long testified Bruce stated he would "use a different object to mess my face up."  Bruce then stepped out the front door of the trailer to retrieve a shock absorber.  Bruce hit Long in the face, arms, back, and head with the shock absorber.  Bruce continued to drag Long by her hair and to strike her from behind.  Eventually, Long fell to the floor, at which point Bruce kicked her in the face and stood on her neck until she lost consciousness.

The beating finally came to an end when Long's aunt, Fanny Chavez, knocked on the trailer door.  Bruce ordered Long to hide in the middle bedroom so Chavez could not see her.  After a delay, Bruce answered the door; Chavez noted Bruce had blood spatter on his face and blood on his fingers and knuckles.  Bruce told Chavez that Long was not home and that he thought she was still at her mother's house.  Long, however, was able to get Chavez's attention through a window in the trailer and indicate she needed help.  At that point, Long bolted past Bruce and jumped into Chavez's truck.  Long and Chavez waited a few moments because Kendall Jr. was still in the trailer and they feared for his safety.  Bruce let Kendall Jr. out the front door; Kendall Jr. was covered with blood

-4-

spatter, but was not injured physically. Chavez drove Long to her mother's home; from there, an ambulance took Long to Cibola General Hospital.

Doctor Chander Bhatia, an internist and certified trauma and life support specialist, treated Long at the hospital. Doctor Bhatia testified that when Long arrived at the hospital, she was in extreme pain and had numerous injuries to her face and body. Doctor Bhatia started Long on intravenous fluids and gave her a "strong," narcotic pain medication. Long told Bhatia that Bruce beat her with a weight lifting object and that she had lost consciousness twice during the beating. Doctor Bhatia testified loss of consciousness could indicate a concussion-based trauma to the brain and the resulting injury could "have long lasting effects."

In addition to the multiple contusions and lacerations on her face and head, Long had a large laceration on her forehead. According to Doctor Bhatia, the large laceration was caused by a blunt object; based on the size of the laceration, the blow that caused it involved "a lot of force." Doctor Bhatia testified injuries to the forehead and scalp, such as Long's, presented a serious possibility of death because they bleed profusely. In fact, at the time she arrived at the hospital, Long had already lost a lot of blood, necessitating the use of intravenous fluids.

Finally, Doctor Bhatia testified that in his expert opinion, Long had suffered extreme pain, the scarring caused by the large laceration on her forehead would be life-long, and the injuries Long suffered presented a substantial risk of death. Doctor Bhatia further noted the injuries Long suffered were consistent

with weapons Long had described Bruce as using to beat her, i.e., a weight lifting object and a shock absorber.

## B. Procedural Background

### 1. Trial

Bruce conceded during his opening statement that he and Long fought on the day of the alleged assaults. He contested, however, the government's assertion he had beaten Long with a weight lifting object or a shock absorber. He also contested the government's assertion the injuries Long suffered as a result of the assaults were "serious." Although Bruce did not testify at trial, his counsel cross-examined each of the government's witnesses concerning the objects used in the beating and the seriousness of the resulting injuries.

Under cross-examination, Long admitted that although she saw Bruce pick up the weight lifting object, she did not actually see him hit her with it. She also testified that other than the afternoon in the hospital following the assault and a return to the hospital to have her stitches removed, she did not have any further medical treatment for the injuries received during the assaults. During cross-examination of Doctor Bhatia, Bruce's counsel adduced testimony that although scalp and forehead injuries bleed freely, the bleeding from Long's injury could have been stopped with the simple application of pressure. Doctor Bhatia also testified that despite the presence of numerous delicate bones in the face, none of the blows to Long's face resulted in broken bones. During cross-examination of

Patrick Yazzie, a Navajo Nation police officer, counsel adduced testimony that Long had previously indicated Bruce did not hit her with the shock absorber. Federal Bureau of Investigation Special Agent Oscar Ramirez testified on cross-examination that blood on the weight lifting object and the shock absorber had not been tested for DNA.

At the close of evidence and prior to closing arguments, Bruce requested that the district court instruct the jury on what the defense asserted was the lesser-included offense of assault by striking, beating, or wounding. *See* 18 U.S.C. § 113(a)(4). The government objected to the proposed instruction on the grounds that the offense had not been charged in the indictment and was not supported by the evidence. When the district court asked Bruce's counsel to point to evidence in the record supporting the requested lesser-offense instruction, the following exchange took place:

> [Defense Counsel]: Your Honor, I think that the evidence is—there is some argument to be made about the nature of the injury. We're talking about an assault that resulted from a striking, beating, or wounding. It's a much less serious charge in terms of the consequences. However, it is still considered an assault. There is evidence that he did strike her, that he had beat on Hannalita Long. There is no clear indication that he understood that he intended the result of the serious injury, which was the cut to the forehead.
> . . . .
> The Court: . . . [H]is statements about what he was going to do to her face would certainly support that conclusion.
> [Defense Counsel]: I suppose that might be true, Your Honor. I would just ask the Court to give Mr. Bruce the opportunity to argue for those lesser included offenses as to each count. I also do have for the Court's consideration step-down instructions as to each count.

-7-

The Court: Well, you tendered this, but you have to have evidence to support it. I didn't hear any, and I'm waiting for you to come forward with some that would support it. . . .

[Defense Counsel]: Your Honor, I . . . think that there is sufficient evidence. I think that there is some argument to be made as far as—for instance, in Count III, the level of the injury. Although the doctor testified that this could have been—there was a risk of loss of life if unattended, what he indicated was that attended would involve basically putting pressure on the wound. I don't think that that rises to the level of the definition of serious bodily injury, or at least is a close enough call where the Court could consider the lesser included[.]

The Court: If that were all, I might agree with you. But a concussion, as he indicated, might indicate subdural hematoma or other brain damage that would be fatal.

[Defense Counsel]: However, he indicated that there was no such subdural hematoma.

The Court: Well, as it turned out, but concussion is evidence of that. I'm going to deny that unless you have evidence. I don't think a step-down is supported by the evidence in this case.

The case was submitted to the jury without a lesser-included-offense instruction; the jury returned guilty verdicts on all three counts set out in the indictment.

*2. Sentencing*

Prior to the sentencing hearing, the United States Probation Office prepared a presentence investigation report ("PSR"). The PSR indicated a term of supervised release was appropriate in this case and that such a term was mandatory if the district court should impose a term of imprisonment of more than one year. *See* 18 U.S.C. § 3583(b); U.S.S.G. § 5D1.1(a). The PSR did not discuss the potential applicability of any special terms of supervised release. Nevertheless, at the conclusion of the sentencing hearing, the district court

announced as one of the special terms of Bruce's supervised release that Bruce "must submit to a search of his person, property, or automobile, to ensure compliance with conditions of supervision, and he must inform anyone with whom he resides that the premises may be subject to such a search at a reasonable time, in a reasonable manner." The district court did not offer any rationale for the imposition of this special condition of supervised release and did not undertake an analysis of the propriety of the special condition under the limitations set out in 18 U.S.C. § 3583(d). Bruce did not object to this special condition of supervised release.

## III. DISCUSSION

### A. Lesser-Included-Offense Instruction

The Federal Rules of Criminal Procedure provide "[a] defendant may be found guilty of . . . an offense necessarily included in the offense charged." Fed. R. Crim. P. 31(c)(1). "The Supreme Court has held a defendant is entitled to an instruction concerning a lesser crime, pursuant to Fed. R. Crim. P. 31(c), if the evidence justifies that instruction." *United States v. Humphrey*, 208 F.3d 1190, 1206 (10th Cir. 2000) (emphasis and quotation omitted). Although the language of Rule 31(c) is discretionary in terms, the rule "is mandatory in the sense that if there is evidence to support a lesser included offense and defendant requests such a charge, the court has no discretion to refuse to give the instruction." *Id.* at 1207

(emphasis and quotation omitted).  This court applies the following four-part test

to determine whether a lesser-included-offense instruction should be given:

> First, the defendant must properly request the instruction; second, the
> elements of the lesser included offense must be a subset of the
> elements of the charged offense; third, the element required for the
> greater, charged offense that is not an element of the lesser offense
> must be in dispute; and fourth, the evidence must be such that the
> jury could rationally acquit the defendant on the greater offense and
> convict on the lesser offense.

*Id.* at 1206.

With these principles in mind, Bruce asserts the district court erred when it

failed to instruct the jury, as to each of the three counts set out in the indictment,

on the lesser-included offense of simple assault.  At trial, however, Bruce did not

request an instruction on the lesser offense of simple assault.  Instead, he

requested a lesser-included-offense instruction on the charge of assault by

striking, beating, or wounding.[1]  Accordingly, this court must first resolve

---

[1]It is clear in this circuit that assault by striking, beating, or wounding is
not a lesser-included offense of assault with a dangerous weapon. *United States
v. Duran*, 127 F.3d 911, 915 (10th Cir. 1997).  Assault by striking, beating, or
wounding, as the equivalent of common-law simple battery, requires a physical
touching, while assault with a dangerous weapon does not. *Id.*  By the same
reasoning, assault by striking, beating, or wounding is not a lesser-included
offense of assault resulting in serious bodily injury. *United States v. Camejo*, 333
F.3d 669, 673-74 (6th Cir. 2003) (citing *Duran*); *see also United States v. Zunie*,
444 F.3d 1230, 1233 (10th Cir. 2006) (setting out elements of assault resulting in
serious bodily injury, none of which includes a physical touching).  As a result,
Bruce does not allege on appeal that the district court erred in refusing to give a
lesser-included-offense instruction on assault by striking, beating, or wounding,
but instead asserts the district court erred in failing to give, *sua sponte*, a lesser-
included-offense instruction on simple assault.

whether, by requesting a lesser-offense instruction of assault by striking, beating, or wounding, Bruce preserved for appeal his claim that the district court erred in failing to instruct the jury on the lesser-included offense of simple assault.

Bruce argues his request for an instruction on assault by striking, beating, or wounding is sufficient to meet this court's "proper request" requirement for a simple assault instruction because he alerted the trial court that he did not want to pursue an all-or-nothing strategy and afforded the district court an opportunity to determine if the evidence warranted any lesser-included instruction. Bruce's argument that he preserved for appeal the district court's failure to *sua sponte* advise the jury on the lesser-included offense of simple assault by requesting an instruction on an entirely different offense is unconvincing. Bruce has not cited a single case which supports the notion that a request for an instruction on a particular lesser-included offense preserves for appeal all possible lesser-included offenses. In fact, the only case cited by Bruce that actually speaks to this question suggests the opposite outcome. *See Hooks v. Ward*, 184 F.3d 1206 (10th Cir. 1999).

In *Hooks*, this court addressed a similar issue in the context of a 28 U.S.C. § 2254 proceeding. *Id.* at 1233-35. *Hooks* began by noting the petitioner requested a second degree murder instruction on a felony-murder theory in state court. *Id.* at 1233. The state trial court denied the request on the ground that it was not supported by the evidence; the Oklahoma Court of Criminal Appeals

affirmed on the same ground. *Id.* at 1230.  In his federal habeas corpus petition, the petitioner abandoned his claim that he was entitled to a second degree murder instruction predicated on felony murder and, instead, claimed an entitlement to such an instruction on the basis of "depraved mind" murder. *Id.* at 1233. Referencing the rule applicable to defendants on direct appeal in the Tenth Circuit, *Hooks* declined to consider the petitioner's claimed entitlement to a "depraved mind" instruction because he had not made a proper request in state court. *Id.* at 1233-35.[2]

The procedural posture of this case is virtually identical to the procedural posture in *Hooks*.  As was the case in *Hooks*, Bruce requested a particular lesser-included-offense instruction before the district court, the district court denied the request on the basis that the instruction was not supported by the evidence adduced at trial, and on appeal Bruce claims he was entitled to an entirely different lesser-included-offense instruction.  In accord with the analysis in *Hooks*, we conclude Bruce's request for an instruction on assault by striking,

---

[2]This court recognizes the analysis of this point in *Hooks* did not garner a majority of the panel.  Although Judges Anderson and Tacha had "no quarrel" with the analysis set out above, both concluded it was unnecessary to reach the issue because the case could be decided on a different ground. *Hooks v. Ward*, 184 F.3d 1206, 1241 (10th Cir. 1999) (Anderson, J., joined by Tacha, J., concurring).  Nevertheless, we conclude the analysis in *Hooks* is persuasive and elucidates the issues raised by Bruce in this appeal.

-12-

beating, or wounding is not a "proper request" preserving for appeal his argument

that he was entitled to an instruction on simple assault. *See id.* at 1233-35.

Bruce would have this court believe a request for any lesser-offense

instruction gives the district court the opportunity to analyze whether the

evidence supports the giving of all possible lesser-offense instructions. The very

nature of the district court's inquiry when considering a lesser-included-offense

instruction, however, is a focused comparison of the lesser offense advanced by

the defendant and the charge set out in the indictment. The district court must

analyze whether: (1) the elements of the identified lesser offense "are a subset of

the elements of the charged offense"; (2) the element "required for the greater,

charged offense that is not an element of the lesser offense" is in dispute; and (3)

the evidence is "such that a jury could rationally acquit the defendant on the

greater offense and convict on the lesser offense." *Humphrey*, 208 F.3d at 1206.

In light of this focused inquiry, it simply cannot be said that in denying Bruce's

request for an instruction on assault by striking, beating, or wounding, the district

court was necessarily concluding a simple assault instruction was not warranted

either.

Bruce asserts that even if he failed to make a proper request for a simple

assault instruction, he is nevertheless entitled to plain error review. Although this

assertion is not without serious doubt,[3] we need not definitively decide the issue because Bruce's claim fails even assuming plain error review is applicable when a defendant fails to make a proper request for a lesser-included-offense instruction.

To establish plain error, Bruce "must show: (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affect[s] substantial rights." *United States v. Whitney*, 229 F.3d 1296, 1308 (10th Cir. 2000) (quotation omitted). "If these three elements are satisfied, then we may exercise discretion to correct the error if it seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotations omitted).

---

[3]In *Hooks*, a case involving a § 2254 habeas petition, this court noted as follows:

> [I]n the related context of whether a federal criminal defendant is entitled to a lesser included offense under Fed. R. Crim. P. 31(c), this court has often held in noncapital cases involving direct appeals that a trial court does not err in refusing to give a lesser included instruction—even one supported by the evidence—if the defendant neglects to make a proper request for one at trial.

184 F.3d at 1234-35 (footnote omitted) (collecting cases). This court, however, has occasionally applied plain error review in contexts similar to that at issue in this case. *See, e.g.*, *United States v. Cooper*, 812 F.2d 1283, 1286 (10th Cir. 1987) (upholding conviction on a lesser offense raised *sua sponte* by district court on ground that "trial judge must give instructions to the jury as required by the evidence and the law where the parties so request or not, and to do so although objections are made"); *United States v. Arreola*, 422 F.2d 869, 869 (10th Cir. 1970) (applying plain error to a claim that trial court erred in failing to give a lesser-included instruction though none was requested).

It is doubtful whether the district court committed error of any kind in failing to *sua sponte* instruct the jury on the lesser-included offense of simple assault as to the two counts of assault with a dangerous weapon with intent to commit serious bodily injury.[4]  Nevertheless, because this case is most easily

---

[4]Simple assault is a lesser-included offense of assault with a dangerous weapon.  Bruce, however, cannot demonstrate that both elements differentiating the two offense are in dispute.  *See United States v. Humphrey*, 208 F.3d 1190, 1206 (10th Cir. 2000) (setting out four-part test for determining whether a lesser-included-offense instruction should be given).  In *United States v. Johnson*, this court held as follows:

> The elements differentiating assault with a dangerous weapon from simple assault are the use of a deadly weapon and the intent to commit bodily harm.  While [defendant's] intent was very much in dispute by virtue of his level of intoxication, his use of a deadly weapon is not.  [Defendant] admitted he pointed a gun at [the police officer] and fired it.  When no dispute exists regarding elements of the greater offense which are not part of the lesser offense, then no lesser offense instruction is appropriate.

967 F.2d 1431, 1436 (10th Cir. 1992).  In essence, *Johnson* holds that when the charged count is assault with a dangerous weapon, to be entitled to a simple assault instruction the defendant must contest both elements differentiating simple assault from assault with a dangerous weapon, i.e., intent to commit bodily harm and use of a dangerous weapon.  *Id.*  Because, as Bruce admits in his brief on appeal, he disputed only the dangerous weapon element, he was not entitled to a lesser-included-offense instruction on simple assault as to the two counts of assault with a dangerous weapon under this court's precedent.

Bruce asserts, however, that *Johnson* was wrongly decided and should be corrected through this court's *en banc* footnote procedure.  *See United States v. Meyers*, 200 F.3d 715, 721 n.3 (10th Cir. 2000).  This court is not unsympathetic to Bruce's assertion that *Johnson* was wrongly decided and a defendant is entitled to a lesser-offense charge as long as any one of the elements that distinguishes the charged offense and the requested lesser offense is in dispute.  *See Keeble v. United States*, 412 U.S. 205, 212-13 (1973) ("Where *one of the elements* of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction." (emphasis added)); *United States v. Estrada-Fernandez*, 150 F.3d 491, 493-94, 496-97 (5th

-15-

resolved at the fourth prong of the plain error analysis, this court will assume Bruce has demonstrated a plain error affecting his substantial rights as to all three counts and proceed to the question whether failing to correct the error will result in a fundamental miscarriage of justice. *See United States v. Smith*, 413 F.3d 1253, 1282 (10th Cir. 2005) (assuming plain error and proceeding to dispose of case on third prong of plain error test); *United States v. Gonzalez-Huerta*, 403 F.3d 727, 736 (10th Cir. 2005) (en banc) (noting there is no need to resolve third prong of plain error test if the appellant cannot satisfy the fourth prong of the test).

Bruce cannot satisfy the fourth prong of the plain error test as to his two convictions of assault with a dangerous weapon because he cannot demonstrate any error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Gonzalez-Huerta*, 403 F.3d at 732. Under this standard, "we will not notice a non-constitutional error, such as the one in the case before us, unless it is both particularly egregious and our failure to notice the error would result in a miscarriage of justice." *Id.* at 736 (quotations omitted). Bruce bears the burden of satisfying this demanding standard. *Id.* at 737.

---

Cir. 1998) (holding district court erred in refusing to give simple assault instruction on charge of assault with a dangerous weapon when only the dangerous weapon element was in dispute). Because Bruce cannot demonstrate his entitlement to relief under the fourth prong of the plain error analysis, however, this is not the appropriate case to take up the correctness of *Johnson*. *See infra* at 15-16.

Despite Bruce's protestations to the contrary, the government's case against him was strong. Long specifically testified Bruce beat her with the weight lifting object and shock absorber. Doctor Bhatia testified Long's injuries were consistent with a beating by those two objects and that Long indicated she had been beaten with those objects during her trip to the emergency room. The objects were discovered in the trailer in the places described by Long and consistent with her version of events. Even assuming Bruce adduced through cross-examination sufficient testimony to create a fact question about the objects used in the beating, the government's case on both counts of assault with a dangerous weapon was sufficiently strong that this court concludes Bruce failed to carry his burden of demonstrating the absence of a lesser-offense charge resulted in a fundamentally unfair proceeding or miscarriage of justice. *See United States v. Anderson*, 201 F.3d 1145, 1152 (9th Cir. 2000) (observing strength of government's case is relevant in determining whether failure to give lesser-offense instruction affected fairness, integrity, or reputation of judicial proceedings).

Bruce also fails to demonstrate the district court committed plain error in failing to *sua sponte* instruct the jury on the lesser-included offense of simple assault as to the count of assault resulting in serious bodily injury. Even assuming an error that is plain and affected Bruce's substantial rights, Bruce has not carried his burden of demonstrating the absence of a simple assault instruction

-17-

resulted in a miscarriage of justice. *See Gonzalez-Huerta*, 403 F.3d at 736-37. The testimony of Doctor Bhatia is key to this court's conclusion in that regard. The jury was specifically instructed, in line with the statutory definition, that to find Long suffered serious bodily injury, the assault must have resulted in: (1) a substantial risk of death; (2) extreme physical pain; (3) protracted and obvious disfigurement; or (4) protracted loss or impairment of the function of a bodily member, organ, or mental faculty. 18 U.S.C. §§ 113(b)(2), 1365(h)(3). Doctor Bhatia specifically testified as follows: (1) it was his reasoned medical opinion that the laceration to Long's forehead was life-threatening because of the possibility Long could have bled to death; (2) Long was in such extreme pain that she had to be given strong, narcotic painkillers; and (3) it was his reasoned medical opinion that the scar on Long's forehead was life-long. Although cross-examination of Doctor Bhatia did bring into contention, even if only slightly, the extent of Long's injuries and the magnitude of her pain, Doctor Bhatia's testimony that Long would suffer a life-long disfigurement is completely uncontested. In these circumstances, we have no difficulty concluding the district court's failure to *sua sponte* give the jury a simple assault instruction with regard to the count of assault resulting in serious bodily injury did not result in a miscarriage of justice.

*B. Special Condition of Supervised Release*

Bruce argues this case must be remanded to the district court for further proceedings because the district court failed to provide pre-hearing notice of its intent to impose as a special condition of supervised release that Bruce consent to suspicionless searches of his person and property. *See United States v. Bartsma*, 198 F.3d 1191, 1197-1201 (10th Cir. 1999). The United States asserts *Bartsma* does not apply because the special condition directly relates to the crimes for which Bruce was convicted.[5] *See id.* at 1200 n.7. Because the special condition at issue here involves a liberty interest, and because there is no obvious nexus between the special condition and crimes of conviction, *Bartsma* controls and requires a remand to the district court for a new sentencing proceeding after proper notice to Bruce of the potential applicability of the suspicionless-search condition. *Id.* at 1999-1200 & n.7.

---

[5]The government also argues the district court properly exercised its discretion in requiring Bruce to consent to suspicionless searches of his person and property as a special condition of supervised release. Bruce, however, does not challenge the merits of the district court's order. Instead, he limits his argument to the narrow assertion that lack of notice regarding the possibility of application of the suspicionless-search condition denied him fundamental fairness. Because this court concludes Bruce was entitled to notice prior to the sentencing hearing of the potential applicability of the search condition, it is unnecessary to address whether the district court abused its discretion in imposing the condition. *See United States v. Bartsma*, 198 F.3d 1191, 1200 (10th Cir. 1999) ("Having determined [the defendant] was entitled to notice, we do not reach the issue of whether the district court abused its discretion by imposing the sex-offender-registration requirement in this case.").

Because *Bartsma* controls the disposition of this case, we set out the factual and legal background of that case in some detail. Bartsma was convicted of one count of possession of a firearm by a convicted felon. *Id.* at 1194. "[N]ear the beginning of [Bartsma's] sentencing hearing," having given no prior notice that it would do so, the district court announced a tentative sentence that included a sex-offender-registration condition of supervised release. *Id.* at 1197-98. Bartsma did not object. *Id.* at 1198. The district court ultimately adopted the condition and justified the decision on the following grounds: (1) Bartsma's prior offenses involved child molestation and rape; (2) Bartsma had a history of recidivism; and (3) California had previously refused to grant Bartsma parole because he was viewed as a danger to the community. *Id.* at 1194.

On appeal, this court rejected the assertion that review should be limited to plain error because Bartsma failed to object to lack of notice before the district court. *Id.* at 1197-98. Instead, *Bartsma* held a challenge to the lack of notice of the condition's possible imposition was preserved for appeal because the lack of notice "short-circuited the significance of any opportunity to comment." *Id.* at 1198. Accordingly, this court reviewed *de novo* the question whether Bartsma was entitled to pre-hearing notice of the possible applicability of the special sex-offender-registration condition. *See id.* at 1199-1201.

*Bartsma* noted the question whether a defendant is entitled to notice before imposition of a sex-offender-registration special condition of supervised release

-20-

was one of first impression. *Id.* at 1199. Relying on Federal Rule of Criminal Procedure 32(c)(1), as interpreted by the Supreme Court in *Burns v. United States*, 501 U.S. 129 (1991), this court answered that question in the affirmative. *Bartsma*, 198 F.3d at 1199-1200.

Although Federal Rule of Criminal Procedure 32 has been substantially revised, the features of the rule that led the *Bartsma* court to conclude pre-hearing notice was required are essentially unchanged.[6] That is, the current version of the Federal Rules of Criminal Procedure specifically grant the defendant the right to comment on matters relating to the appropriate sentence and to speak on his own behalf. Fed. R. Crim. P. 32(i)(1)(C), 32(i)(4)(A)(i). That right is essentially meaningless without some indication that a special condition of supervised release is being contemplated by the district court. *Bartsma*, 198 F.3d at 1199 ("Not requiring notice would be inconsistent with Rule 32's purpose of promoting focused, adversarial resolution of the legal and factual issues relevant to fixing Guidelines sentences." (quotation omitted)). Furthermore, the United States Code

---

[6]*Compare* Fed. R. Crim. P. 32(c) (1996) ("At the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence."), *with* Fed. R. Crim. P. 32(i)(1)(C) (2006) ("At sentencing, the court[] . . . must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence . . . ."), *and* Fed. R. Crim. P. 32(i)(4)(A)(i) (2006) ("Before imposing sentence, the court must[] provide the defendant's attorney an opportunity to speak on the defendant's behalf . . . .").

provisions governing supervised release provide that discretionary conditions of supervised release are appropriate only to the extent they involve "no greater deprivation of liberty than is reasonably necessary," are "reasonably related" to the nature and circumstances of the crime of conviction and the history and characteristics of the defendant, and are "consistent with . . . policy statements issued by the Sentencing Commission." 18 U.S.C. §§ 3583(d), 3553(a). The failure to notify a defendant that a special condition of supervised release without an obvious nexus to the crime of conviction is being contemplated makes it unlikely an appropriate record of the propriety of the special condition under § 3583(d) will be developed before the district court. *See Bartsma*, 198 F.3d at 1200.

To be sure, *Bartsma* made clear that pre-hearing notice of all special conditions is not required. *Id.* at 1200 n.7. Instead, notice of a special condition is required only when the condition "implicate[s] a liberty interest, and there [is] a lack of any obvious nexus between the condition and the crime of conviction." *Id.* We conclude this is one of those highly unusual cases where pre-hearing notice was required.

First, it is clear, and the government does not argue to the contrary, that the suspicionless-search condition implicates a liberty interest. By virtue of the condition, Bruce is subject to a search of his person, his home, and his vehicle whenever a probation officer chooses to ensure compliance with the terms of

-22-

Bruce's supervised release.  Furthermore, there is no obvious nexus between the condition and the crimes of conviction and nothing in the record that should have placed Bruce on notice of the potential applicability of the condition before the sentencing hearing.

The suspicionless-search condition is neither a required condition of supervised release set out in 18 U.S.C. § 3583(d), a discretionary condition of supervised release described in §§ 3583(d) and 3563(b), nor a standard condition of supervised release adopted in the United States District Court for the District of New Mexico.  Additionally, it is not a condition required or recommended to be imposed by the Sentencing Guidelines.  *See* U.S.S.G. § 5D1.3; *see also United States v. Coenen*, 135 F.3d 938, 943 (5th Cir. 1998) (noting that because the special condition at issue in the case was not contemplated by the Guidelines, pre-hearing notice was more important to guarantee Rule 32's purpose of promoting focused sentencing proceedings).  A district court surely has the authority to impose a suspicionless-search condition in certain circumstances.  *United States v. White*, 244 F.3d 1199, 1208 (10th Cir. 2001).  It is not, however, a condition a defendant convicted of assault, particularly a defendant without any unusual criminal history obviously implicating suspicionless searches, may ordinarily expect to be encompassed within the court's imposition of supervised release.

The United States nevertheless argues Bruce was not entitled to pre-hearing notice of the potential applicability of the suspicionless-search condition because

-23-

the special condition has a nexus to the crimes of conviction. According to the government, the PSR noted the assaults at issue here involved alcohol.[7] Furthermore, the district court expressed concern about Bruce's alcohol problem during the sentencing hearing and specifically adopted, as a special condition of supervised release, that Bruce not possess or consume alcohol. The government extrapolates that the suspicionless-search condition was adopted by the district court specifically to enforce the alcohol-possession special condition, and further asserts this provides the requisite nexus between the suspicionless-search condition and the crimes of conviction.

The government's contentions are unconvincing. The "nexus" proposed by the government is far too attenuated to remove this case from the ambit of *Bartsma*. Admittedly, the alcohol-possession special condition does provide a tenuous link between the crimes of conviction and the suspicionless-search condition. Nevertheless, the potential applicability of an alcohol-possession special condition is hardly the type of "obvious nexus" that would apprise a reasonable person in Bruce's position of the need to be prepared to discuss at

_____

[7]The PSR provides as follows:
On the advice of defense counsel, the defendant did not discuss any substance abuse issues with the Probation Office. However, according to offense reports, the defendant ha[d] been drinking alcohol before, during and after he assaulted his wife, H. Long. He reported that he could not recall most aspects of the assault as he was intoxicated. It would appear the defendant should be required to participate in a substance abuse program.

sentencing the propriety of a suspicionless-search special condition. *Bartsma*, 198 F.3d at 1200 n.7. This is especially true when the governing provisions of the United States Code and the Sentencing Guidelines require that special terms of supervised release involve "no greater deprivation of liberty than is reasonably necessary." 18 U.S.C. § 3583(d); U.S.S.G. § 5D1.3(b)(2).

Furthermore, the government's extrapolation that the suspicionless-search condition was intended by the district court to specifically enforce the alcohol-possession special condition is not supported by the record. In fact, the district court ordered Bruce to consent to suspicionless searches "to ensure compliance with all conditions of supervision," not just to enforce the alcohol-possession special condition. The reality is that the district court did not offer any justification for imposing the suspicionless-search condition and none is readily apparent from the record. The government's *post hoc* rationalizations for the special condition do not demonstrate a sufficient nexus between the condition and the crimes of conviction. Therefore, the *Bartsma* requirement of pre-hearing notice does apply in this case and the matter must be remanded to the district court to vacate its sentence and resentence Bruce.

## IV. CONCLUSION

Because the district court did not commit reversible error when it failed to *sua sponte* instruct the jury on the lesser-included offense of simple assault, this

court **AFFIRMS** all three of Bruce's convictions. We must, however, **REMAND** the case to the district court to vacate Bruce's sentence and conduct a new sentencing proceeding at which both parties can argue, now having proper notice of its potential applicability, the propriety of the suspicionless-search special condition of supervised release.