**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 17, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

NOWLIN LEE WAUGH, JR.,

Defendant - Appellant.

No. 18-7062

_____

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:18-CR-00038-RAW-1)**
_____

Christopher Wilson, Assistant United States Attorney (Brian J. Kuester, United States Attorney; Linda A. Epperley, Assistant United States Attorney, with him on the brief), Muskogee, Oklahoma, for Plaintiff - Appellee.

Dean Sanderford, Office of the Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Denver, Colorado, for Defendant - Appellant.
_____

Before **CARSON**, **BALDOCK**, and **EBEL**, Circuit Judges.
_____

**BALDOCK**, Circuit Judge.
_____

On March 23, 2018, Defendant Nowlin Lee Waugh, Jr. was driving on Interstate 40 in Eastern Oklahoma when Oklahoma Highway Patrol Trooper Aaron Lockney observed his vehicle cross over the fog line. Believing the driver was fatigued, texting,

or under the influence of drugs or alcohol, Trooper Lockney initiated a traffic stop. Trooper Lockney activated his emergency lights, but Defendant refused to yield and continued eastbound on Interstate 40. Trooper Lockney observed Defendant moving erratically and reaching into the backseat area of the vehicle. Trooper Lockney also observed Defendant throwing items out of the driver's side window.

After following Defendant for approximately 10 miles, Trooper Lockney performed a "tactical vehicle intervention," ramming Defendant's vehicle and bringing it to a stop. Trooper Lockney identified Defendant as the driver and sole occupant of the vehicle. Inside the vehicle, Trooper Lockney and other officers found two trashcans, four gallon-size bottles of bleach, shards of suspected methamphetamine strewn about the vehicle, six kilo-sized vacuum-sealed bags that had been ripped open, two or three gallon-sized Ziploc bags, and some shrink wrap. The interior of the vehicle was wet in places and smelled strongly of bleach. One of the trash cans contained bleach and shards of suspected methamphetamine. The troopers believed Defendant used the bleach to destroy large quantities of methamphetamine during the ten-mile police chase. The troopers recovered the largest shards of suspected methamphetamine for testing. The suspected methamphetamine was subsequently weighed at 54.19 grams of methamphetamine with a 93% purity rate.

Thereafter, Defendant was charged with possession with intent to distribute 50 or more grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Defendant proceeded to trial and argued that, although he possessed methamphetamine, he did not intend to distribute it. Defendant introduced no evidence

2

he was a user of methamphetamine but, during opening and closing statements, defense counsel argued the Government could not prove Defendant possessed the requisite intent to distribute. In furtherance of this defense, Defendant asked the district court to instruct the jury on the lesser included offense of simple possession. The district court denied Defendant's request, and the jury returned a guilty verdict. Defendant appeals, arguing the district court erred in refusing to give the lesser included instruction on mere possession. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

***

A defendant is entitled to an instruction on a lesser included offense if the evidence would permit a rational jury to convict the defendant of the lesser offense and acquit him of the greater. *United States v. Pacheco*, 884 F.3d 1031, 1047 (10th Cir. 2018). This rule recognizes "where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offenses, the jury is likely to resolve its doubts in favor of conviction." *Id.* (quoting *Keeble v. United States*, 412 U.S. 205, 212–13 (1973)). Thus, "if there is evidence to support a lesser included offense and defendant requests such a charge, the court has no discretion to refuse to give the instruction." *Pacheco*, 884 F.3d at 1047 (quoting *United States v. Bruce*, 458 F.3d 1157, 1162 (10th Cir. 2006)). To warrant an instruction on a lesser included offense, the defendant must establish: (1) he properly requested the instruction; (2) the elements of the lesser offense are included in the elements of the greater offense; (3) the element differentiating the two offenses is in dispute; and (4) the jury is able to

3

rationally acquit the defendant of the greater offense and convict on the lesser offense. *Id.*

In this case, the parties agree the first three requirements are met. Therefore, at issue is whether the jury would have been able to rationally acquit Defendant of possession with intent to distribute and instead convict him on simple possession. The district court found there was no evidence of personal use and substantial evidence of distribution. Accordingly, the district court held an instruction on the lesser included offense of simple possession was not warranted.

We review the district court's decision for an abuse of discretion. *Id.* An abuse of discretion is defined as "judicial action which is arbitrary, capricious, or whimsical" or judicial action based upon "manifestly unreasonable judgment, prejudice, bias, or ill will which is ascertainable from the record." *Id.* (quoting *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990)).

* * *

Upon review, we conclude the district court did not abuse its discretion in declining to give an instruction on simple possession. Based on the quality and quantity of the methamphetamine recovered, as well as the circumstances surrounding the recovery of the methamphetamine, no rational jury could find the methamphetamine was intended for personal use rather than distribution.

First, when highway patrol forced Defendant's vehicle to a stop, troopers recovered 54 grams of methamphetamine from the vehicle. Special Agent Sean Henry

4

testified a personal use quantity is approximately a quarter gram.[1]  Therefore, Agent Henry calculated Defendant had at least 200 single dose units of methamphetamine. Agent Henry further testified, in his twenty-year career, he has never encountered an addict who possessed this much methamphetamine for personal use.  In fact, Agent Henry testified a personal use quantity of methamphetamine would not exceed 10 grams—less than 1/5 of the amount recovered in this case.  There was absolutely no evidence presented that 54 grams of methamphetamine could amount to a personal use quantity.  *See United States v. Powell*, 982 F.2d 1422, 1430 (10th Cir. 1992) (noting it is well settled that intent to distribute "may be inferred from the possession of a large quantity of the substance").

Then, the DEA's forensic chemist testified the methamphetamine recovered was 93% pure.  Based on this purity level, Agent Henry testified a distributor could mix the methamphetamine with a "cutting agent" to double the amount of methamphetamine available for distribution.  *See United States v. Burns*, 624 F.2d 95, 102 n.1 (10th Cir. 1980) (holding "the purer the drug the more likely that it will be cut or diluted and resold before being consumed").  The evidence related to the quantity and quality of methamphetamine recovered is highly probative of distribution, and it is unlikely a rational jury could find this amount of methamphetamine, at this purity rate, was intended for personal use.

---

[1] Special Agent Henry is employed by the Drug Enforcement Administration ("DEA") and was qualified as an expert in the field of methamphetamine distribution.

5

Furthermore, the circumstances surrounding the recovery of the methamphetamine support the district court's determination that a simple possession instruction was not warranted. The evidence showed that on March 22, 2018, Defendant spent $521.22 to rent a car in Fort Smith, Arkansas. The same day, he traveled from Fort Smith to Oklahoma City, where he paid $187.88 in cash to stay at a motel. The very next day, Defendant was traveling back toward Fort Smith when the stop occurred and the methamphetamine was seized. It seems unlikely Defendant would travel six hours roundtrip, rent a motel, and spend over $700 to obtain methamphetamine for personal use. *Id.* at 102 (finding that traveling from San Diego to Denver and renting a motel room to purchase cocaine is indicative of possession with intent to distribute rather than mere possession).

Additionally, Agent Henry surmised Defendant devised a scheme to avoid detection and destroy the methamphetamine in the event he was caught. Specifically, Agent Henry testified Defendant used the four gallons of bleach to destroy at least an additional three pounds of methamphetamine during the ten-mile police pursuit. *See United States v. Winder*, 557 F.3d 1129, 1138 (10th Cir. 2009) (finding intentional flight is circumstantial evidence of guilt generally). Agent Henry testified this additional quantity of methamphetamine was packaged in six "heat-sealed" bags to avoid detection. These additional three pounds of methamphetamine equate to over 1,000 single dose units—a distribution quantity that Agent Henry testified would take Defendant "years" to use or that Defendant could sell for over $100,000.

6

All of these circumstances—including Defendant's trip from Fort Smith to Oklahoma City, Defendant's intentional flight and premeditated plan to destroy evidence, and the additional methamphetamine Defendant likely possessed—suggest a "sophisticated and expensive operation with larger designs than provision for [Defendant's] personal use." *Burns*, 624 F.2d at 102.

Finally, neither the Government nor Defendant presented any evidence indicative of personal use. Law enforcement did not find any personal use paraphernalia in Defendant's vehicle, such as glass pipes, syringes, or tiny baggies. Similarly, neither the Government nor Defendant presented any evidence that Defendant was under the influence of methamphetamine at the time of the stop. Indeed "[t]here is a surprising lack of evidence which tends to support simple possession." *Fitzgerald v. United States*, 719 F.2d 1069, 1072 (10th Cir. 1983). Although this alone is not dispositive, "[i]f this is to be a viable dispute, there should be some evidence which tends to support simple possession." *Id.*

Nevertheless, Defendant argues our holding in *United States v. Burns* mandates reversal. In *Burns*, we held the district court abused its discretion in declining to give an instruction on mere possession when the evidence showed the defendants traveled from San Diego, California, to Denver, Colorado, with scales in their luggage, and purchased $13,000 worth of 100% pure cocaine. 624 F.2d at 102–05. We are not persuaded *Burns* controls the analysis here.

In this case, while law enforcement only collected 54 grams of methamphetamine, the Government presented expert testimony that Defendant

7

possessed and destroyed an additional $100,000 worth of methamphetamine during the police pursuit—substantially more than the $13,000 worth of cocaine in *Burns*. Moreover, in *Burns* the Government presented no expert testimony that the amount and purity of the cocaine seized was indicative of intent to distribute. *See* 624 F.3d at 101. In contrast, the Government presented substantial expert testimony in this case that the amount and purity of the methamphetamine supports the conclusion that Defendant intended to distribute the methamphetamine.

Additionally, there was no evidence in *Burns* that the defendants concocted an elaborate scheme to destroy evidence if caught. This type of sophistication, as is present here, is illustrative of an intent to distribute. *See United States v. Taylor*, 683 F.2d 18, 21 (1st Cir.), *cert. denied* 459 U.S. 945 (1982) (holding "the complex nature of the operation" is indicative of intent to distribute). Finally, in *Burns* the Government conceded that the jury was "not compelled to draw the inference" that the defendants had the intent to distribute the cocaine but nevertheless argued that "sufficient evidence was before them that would allow them to do so." *Burns*, 624 F.2d at 104 n.2. The Government has made no such concession in this case. Thus, *Burns* is easily distinguishable from the instant case and does not control our analysis here.[2]

---

[2] Defendant's contention that our decision in *United States v. Trujillo* requires reversal is similarly without merit. In *Trujillo*, we held the district court did not abuse its discretion in deciding to *give* an instruction on the lesser included offense of mere possession. 390 F.3d 1267, 1275 (10th Cir. 2004). Although the district court thought it was a "close question," the district court decided to give the instruction because the Government relied solely on the quantity of drugs to prove intent to distribute, and yet, no Government witness testified the amount of cocaine seized was consistent with distribution. *Id.* at 1270–73. In this case, the Government's expert witness testified

8

Ultimately, we may only reverse the district court's denial of the lesser included instruction if we are "convinced a rational jury could convict on the lesser charge and acquit on the greater charge." *Pacheco*, 884 F.3d at 1048 (citing *United States v. Moore*, 108 F.3d 270, 272 (10th Cir. 1997)). Given the substantial evidence supporting a distribution theory, and the complete lack of evidence supporting a personal use theory, we cannot say the district court abused its discretion in declining to give an instruction for the lesser included offense of simple possession.

\* \* \*

Accordingly, for the reasons provided herein, the district court is affirmed.

---

the amount of methamphetamine at issue was indisputably a distribution quantity. Moreover, the large quantity of methamphetamine seized was only one indication of Defendant's intent to distribute. As previously stated, the quality of the methamphetamine recovered and the circumstances surrounding the recovery of the methamphetamine were also indicative of drug distribution. Thus, *Trujillo* is inapposite.

9