# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

Patrick J.  Fisher, Jr.                                      Elisabeth A. Shumaker
Clerk                                                        Chief Deputy Clerk

October 10, 1997


**TO:**   All recipients of the captioned opinion

**RE:**   96-8121, USA v. Duran & 96-8123, USA v. Monroe
          October 7, 1997


Please be advised of the following correction to the captioned decision:

In the attorney designation section on the first page of the opinion, the Assistant U.S. Attorney is mistakenly listed as counsel for Defendant-Appellant.  Similarly, the Assistant Federal Public Defender is incorrectly listed as counsel for Plaintiff-Appellee. The designations should be reversed.  Please make the correction.

Very truly yours,

Patrick Fisher, Clerk


Susie Tidwell
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 7 1997**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MICHAEL GABRIEL DURAN,

    Defendant-Appellant.

No. 96-8121

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

LEO HERMAN MONROE, Sr.,

    Defendant-Appellant.

No. 96-8123

**Appeal from the United States District Court**
**for the District of D. Wyo.**
**(D.C. Nos. 96-CR-63-1 & 96-CR-63-2)**

James H. Barrett, Assistant Federal Defender (Michael G. Katz, Federal Public Defender, Denver, Colorado, with him on the briefs), Cheyenne, Wyoming, for Defendant-Appellant in No. 96-8121; Ronald G. Pretty for Defendant-Appellant in No. 96-8123.

John R. Green, Assistant United States Attorney (David D. Freudenthal, United States Attorney with him on the briefs), Cheyenne, Wyoming, for Plaintiff-

Appellee in No. 96-8121 and No. 96-8123.

Before **BALDOCK, BRORBY** and **BRISCOE**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

In this opinion, we consolidate Case No. 96-8121 and Case No. 96-8123 for decision. In Case No. 96-8121, Appellant/Defendant Michael Gabriel Duran appeals his conviction for assault with a dangerous weapon and aiding and abetting. In Case No. 96-8123, Appellant/Defendant Leo Herman Monroe, Sr. appeals his conviction for assault with a dangerous weapon and aiding and abetting. Mr. Monroe also appeals the trial court's enhancement of his sentence. We exercise jurisdiction over these appeals pursuant to 28 U.S.C. § 1291 and affirm.

On May 24, 1996, Mr. Monroe and Mr. Duran were charged in a two-count indictment with (1) assaulting Marvette Dean Oldman with a dangerous weapon with intent to do bodily harm, and aiding and abetting each other in the commission of that offense, in violation of 18 U.S.C. §§ 113(a)(3), 1153, and 2, and (2) assaulting David John Oldman with a dangerous weapon with intent to do bodily harm, and aiding and abetting each other in the commission of that offense, in violation of 18 U.S.C. §§ 113(a)(3), 1153, and 2.

On September 23, 1996, Mr. Monroe and Mr. Duran went to trial on the charges in the indictment. At the consolidated trial, Marvette Oldman provided the following testimony. On May 16, 1996, he was at the Wind River Indian Reservation in Wyoming visiting relatives. That morning, Mr. Oldman left his cousin's home in his Buick Riviera to go and pick up his wife at the hospital in Lander, Wyoming. Marvette Oldman was accompanied by his one-year old son, Amos, and his uncle, David John Oldman.

On the way to Lander, Mr. Oldman pulled into the property of Pat Behan so that David Oldman could go to the bathroom. David Oldman had previously rented property from Mr. Behan. After Mr. Oldman and David Oldman had gotten out of the Buick, Mr. Monroe, Mr. Duran and Virgil Monroe[1] came running at Mr. Oldman saying they were going to kill him. Although Mr. Oldman ran down the road, he stopped when he saw his Buick Riviera coming toward him. Mr. Oldman believed the car was being driven by his uncle since the driver had long hair and glasses. However, the car sped up and hit Mr. Oldman at his knees, knocking him into the borrow pit. The driver of the car was Mr. Duran.

---

[1] Virgil Monroe was also indicted and tried on charges of assaulting Marvette and David Oldman. However, the jury acquitted Virgil Monroe of all charges.

After being hit by the car, Mr. Oldman got up and ran toward the river. Mr. Duran exited the car and chased Mr. Oldman with a baseball bat. Eventually, Mr. Duran and Mr. Monroe caught up with Mr. Oldman. Mr. Monroe kicked Mr. Oldman in the back and "hit" him in the side with a knife. Mr. Duran hit Mr. Oldman in the head twice with the baseball bat, rendering Mr. Oldman unconscious with the second blow.

When Mr. Oldman regained consciousness, he crawled into the river and "floated" downstream for about a half mile. Mr. Oldman then crawled out of the river and "headed towards [a] house." A man came out of the house and called an ambulance. When the ambulance arrived, Mr. Oldman was taken to the hospital, where he received treatment for his injuries.

Following the presentation of evidence at trial, Mr. Monroe and Mr. Duran tendered instructions and verdict forms to the court proposing an instruction for a lesser included offense of assault by striking, beating or wounding pursuant to 18 U.S.C. § 113(a)(4). However, the court rejected the proposed instructions and verdict forms, concluding the crime of striking, beating or wounding was not a lesser included offense of assault with a dangerous weapon. Specifically, the court stated that under Tenth Circuit law, a lesser included offense must

-4-

have the same elements as the prior charged offense.  And it seems to me that striking, beating and wounding doesn't have the weapon element.  It doesn't have the car, the bat or the knife in it, and, therefore, it seems to me that it's just not comparable.

The trial court did, however, provide lesser included offense instructions on the Wyoming crime of aggravated assault.[2]

On September 27, 1996, the jury returned a verdict of guilty against Mr. Monroe and Mr. Duran on Count One of the indictment -- assaulting, or aiding and abetting in the assault of, Marvette Oldman, with a dangerous weapon with the intent to do bodily harm.  The jury acquitted Mr. Monroe and Mr. Duran of the assault of David Oldman, which was charged in Count Two of the indictment.  At sentencing, the district court raised Mr. Monroe's guideline base offense level by four points pursuant to USSG § 2A2.2(b)(2)(B) (Nov. 1995) for the use of a dangerous weapon.  The court then sentenced Mr. Monroe to a seventy-eight-month term of imprisonment.  The court sentenced Mr. Duran to a forty-two-month term of imprisonment.  Thereafter, Mr. Monroe and Mr. Duran each filed a

---

[2]  The court's instruction on the Wyoming crime of aggravated assault was given pursuant to the Assimilative Crimes Act, 18 U.S.C. § 13.  This act "permits the United States to adopt state law for any act or omission occurring on federal property which, 'although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction for the State, Territory, Possession, or District in which such place is situated.'" *United States v. Johnson*, 967 F.2d 1431, 1433 (10th Cir. 1992) (quoting 18 U.S.C. § 13), *cert. denied*, 506 U.S. 1082 (1993).

timely notice of appeal.

Mr. Monroe's and Mr. Duran's appeals present two issues for our determination: (1) whether the district court erred by failing to instruct the jury on the lesser included offense of striking, beating or wounding and (2) whether the district court engaged in impermissible double counting by increasing Mr. Monroe's base offense level by four points for using a dangerous weapon.

First, both Mr. Monroe and Mr. Duran argue the district court erred by rejecting their proffered instructions setting forth the crime of striking, beating or wounding as a lesser included offense of assault with a dangerous weapon. Mr. Monroe and Mr. Duran contend they satisfied all the requirements for a lesser included offense instruction to be given under *United States v. Fitzgerald*, 719 F.2d 1069 (10th Cir. 1983), and the trial court misapplied law in rejecting their instructions. According to Mr. Monroe and Mr. Duran, the evidence concerning whether a dangerous weapon was used by either of them was in conflict. Consequently, by failing to instruct the jury as to the crime of striking, beating or wounding, Mr. Monroe and Mr. Duran contend the trial court, in effect, made a factual finding that they each possessed and employed a dangerous or deadly weapon.

Whether an offense for which an instruction is sought actually qualifies as a lesser included offense of the offense charged is a question of law that we review *de novo*. *United States v. Abeyta*, 27 F.3d 470, 473 (10th Cir. 1994). However, we review the district court's decision as to whether there is enough evidence to justify a lesser included offense instruction for an abuse of discretion. *Id*.

Fed. R. Crim. P. 31(c) provides, in relevant part, that a "defendant may be found guilty of an offense necessarily included in the offense charged." The Supreme Court has held a defendant is entitled to an instruction concerning a lesser crime, pursuant to Fed. R. Crim. P. 31(c), if the evidence justifies such an instruction. *Sansone v. United States*, 380 U.S. 343, 349 (1965). The lesser included offense doctrine was developed as an aid to the prosecution in cases in which its evidence "'failed to establish some element of the crime charged.'" *United States v. Schmuck*, 489 U.S. 705, 717 n.9 (1989) (quoting *Beck v. Alabama*, 447 U.S. 625, 633 (1980)). However, as the doctrine developed, it became clear that it could also benefit the defendant "by providing an opportunity for the jury to acquit him on the offense charged in the indictment, while finding him guilty on the lesser offense." *United States v. Cooper*, 812 F.2d 1283, 1287 (10th Cir. 1987) (Baldock, J., concurring). After all, "[w]here one of the

elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction." *Keeble v. United States*, 412 U.S. 205, 212-13 (1973).

We apply a four-part test to determine when a lesser included offense instruction must be given. *See, e.g., Fitzgerald*, 719 F.2d at 1071. First, there must be a proper request for an instruction. *Id*. at 1071. Second, the elements of the lesser included offense must be a subset of the elements of the greater (charged) offense. *Id*; *Abeyta*, 27 F.3d at 473-74; *Schmuck*, 489 U.S. at 716. Third, the element differentiating the two offenses must be a matter in dispute. *Fitzgerald*, 719 F.2d at 1071. Fourth, the jury must be able to rationally acquit the defendant on the greater offense and convict on the lesser offense. *Id*. The court is not required to provide the requested instruction unless all four of these factors have been satisfied. *See, e.g., Abeyta*, 27 F.3d at 473-76; *United States v. Horn*, 946 F.2d 738, 743-46 (10th Cir. 1991).

In the present case, the district court ostensibly determined the crime of assault by striking, beating or wounding was not a lesser included offense of assault with a dangerous weapon because the crime of striking, beating or wounding did not contain the element of use of a dangerous weapon. As Mr.

Monroe and Mr. Duran point out in their appellate briefs, however, it appears the district court's logic is flawed. The fact that the offense of assault by striking, wounding, or beating does not contain the element of use of a dangerous weapon does not mean the offense is not a lesser included offense of assault with a dangerous weapon. An offense need not contain all of the elements of a greater offense to be a lesser included offense. If there was such a requirement, there would be no such thing as a lesser included offense. In order to be a lesser included offense, an offense must simply be a subset of the elements of the greater offense. *Schmuck*, 489 U.S. at 716. Thus, by concluding the crime of assault by striking, beating or wounding was not a lesser included offense merely because it did not contain one of the elements of assault with a dangerous weapon, the district court misapplied the elements test.

Nevertheless, we believe we must affirm the district court's refusal to provide the jury with the requested instructions on alternative grounds. *See Swoboda v. Dubach*, 992 F.2d 286, 291 (10th Cir. 1993) (appellate court can affirm district court for reasons other than those relied on by the district court). Under the elements test, the offense of striking, beating or wounding is simply not a lesser included offense of assault with a dangerous weapon. Assault by striking, beating or wounding under 18 U.S.C. § 113(a)(4) (formerly 18 U.S.C. § 113(d))

requires a physical touching and is the equivalent of simple battery. *See United States v. Joe*, 831 F.2d 218, 220 (10th Cir. 1987), *cert. denied*, 484 U.S. 1072 (1988); *United States v. Johnson*, 637 F.2d 1224, 1242 n.26 (9th Cir. 1980); *see also United States v. Guilbert*, 692 F.2d 1340, 1345 (11th Cir. 1982) (affirming defendant's convictions for both assault with a dangerous weapon and assault by striking, beating or wounding even though convictions stemmed from a single incident and a single victim), *cert. denied*, 460 U.S. 1016 (1983). However, assault with a dangerous weapon under 18 U.S.C. § 113(a)(3) (formerly 18 U.S.C. § 113(c)) only requires proof of an assault with a dangerous weapon, with the intent to cause bodily harm. *Johnson*, 967 F.2d at 1435; *Abeyta*, 27 F.3d at 474. The offense does not require proof of any physical contact. Consequently, a defendant may commit assault with a dangerous weapon without committing assault by striking, beating or wounding. Because the offense of assault by striking, beating or wounding requires proof of an element not required to prove assault with a dangerous weapon, the crime of striking, beating or wounding does not qualify as a lesser included offense under the elements test.[3] We therefore

---

[3] In his reply brief, Mr. Duran contends assault by striking, beating or wounding is a lesser included offense under the elements test because that test "permits lesser included offense instructions ... in those cases where the indictment contains the elements of both offenses." It is true that the Supreme Court stated in *Schmuck* that "[t]he elements test ... permits lesser offense instructions only in those cases where the indictment contains the elements of both offenses and thereby gives notice to the defendant that he may be convicted

conclude neither Mr. Monroe nor Mr. Duran was entitled to an instruction on the offense of striking, beating or wounding.[4]

---

on either charge." 489 U.S. at 718. However, we believe a fair reading of *Schmuck* indicates a crime simply does not qualify as a lesser included offense where, as here, "the lesser offense requires an element not required for the greater offense." *Id.* at 716. Moreover, even if *Schmuck* permits a court to give lesser included offense instructions where the indictment contains all the elements of both offenses, this does not change the outcome in the present case. The indictment charging Mr. Monroe and Mr. Duran did not allege that any physical contact took place between either of them and the victim. Hence, the indictment did not contain all of the elements to prove the crime of assault by striking, beating or wounding.

[4] Because we have determined Mr. Monroe and Mr. Duran were not entitled to instructions on the crime of assault by striking, beating or wounding as a matter of law, their contention that the evidence was in conflict concerning whether or not they used a dangerous weapon is irrelevant. However, we do note that the trial court did not, as Mr. Monroe and Mr. Duran contend, effectively make a factual finding that they each possessed and employed a dangerous or deadly weapon. Both Mr. Monroe and Mr. Duran were free to argue to the jury, and counsel informed us at oral argument that they did in fact argue to the jury that they did not assault Marvette Oldman and David Oldman with a dangerous weapon. The jury apparently believed their argument with respect to the alleged assault on David Oldman, and acquitted the defendants on Count Two of the indictment. Had the jury found that Mr. Monroe and Mr. Duran did not assault Marvette Oldman with a dangerous weapon, it would have been obligated to have acquitted the defendants on Count One as well. Thus, the jury resolved the factual issue of whether a dangerous weapon was used, not the district court.

Furthermore, we note Mr. Monroe and Mr. Duran may very well have been entitled to a theory of the case instruction concerning whether they used a dangerous weapon if they had so requested. *See United States v. Martinez*, 979 F.2d 1424, 1432 (10th Cir. 1992) (defendant entitled to theory of case instruction if theory is supported by law and facts in evidence), *cert. denied*, 507 U.S. 1022 (1993). However, because the elements test was not satisfied with respect to the crime of assault by striking, beating or wounding, Mr. Monroe and Mr. Duran were not entitled to lesser included offense instructions on that crime.

Next, Mr. Monroe argues the district court engaged in impermissible double counting by increasing Mr. Monroe's base offense level by four points pursuant to USSG § 2A2.2(b)(2)(B) for using a dangerous weapon.  Because this issue involves a purely legal interpretation of the Sentencing Guidelines, our review is *de novo*.  *United States v. Sorenson*, 58 F.3d 1154, 1160 (7th Cir. 1995); *United States v. Hudson*, 972 F.2d 504, 506 (2d Cir. 1992).

USSG § 2A2.2(a) provides for a base offense level of 15 for the crime of aggravated assault.  Aggravated assault is defined as a "felonious assault that involved (a) a dangerous weapon with intent to do bodily harm ..., or (b) serious bodily injury, or (c) an intent to commit another felony."  USSG §2A2.2 comment. (n. 1).  Section 2A2.2(b) sets forth a graduated enhancement schedule that is triggered by several aggravating factors.  *Sorenson*, 58 F.3d at 1161.  For example, this section instructs the sentencing court to increase the base level by 5 "[i]f a firearm was discharged," by 4 "if a dangerous weapon (including a firearm) was otherwise used," and by 3 "if a dangerous weapon (including a firearm) was brandished or its use was threatened."  USSG § 2A2.2(b)(2).

In the present case, the district court determined Mr. Monroe's base offense level was 15 under USSG § 2A2.2(a), and it then enhanced this level by four

points pursuant to USSG § 2A2.2(b)(2)(B) for the use of a dangerous weapon. In arguing the enhancement constitutes impermissible double counting, Mr. Monroe relies heavily on the Second Circuit's decision in *Hudson*, 972 F.2d at 506-07. In *Hudson*, the defendant drove his car at two federal marshals and was convicted of assaulting a federal officer in violation of 18 U.S.C. § 111 (1988). *Id.* at 505. The district court classified the offense as "aggravated assault" under USSG § 2A2.2, and then imposed a four-level enhancement pursuant to USSG § 2A2.2(b)(2)(B) because the defendant "otherwise used" a dangerous weapon (the automobile) in committing his offense. *Id.* at 505-06.

On appeal, the defendant argued the four-level enhancement was impermissible double counting because the use of the dangerous weapon had already resulted in an increase in his base offense level by making the crime an aggravated assault. *Id.* The Second Circuit agreed with the defendant and determined a district court is not permitted to enhance a base offense level pursuant to 2A2.2(b) for the use of a non-inherently dangerous weapon such as an automobile. *Id.* at 506-07. According to the court, "[w]here an ordinary object is implicated, as was the case here, it is the *use* of the object as a weapon that makes the offense an aggravated assault, and it is the *use* of this weapon which also requires a four-level enhancement pursuant to U.S.S.G. § 2A2.2(b)." *Id.* at 507

(emphsis in original). The court determined that this "two-fold upward adjustment" for the use of a non-inherently dangerous object constitutes "impermissible double counting." *Id.*

However, the *Hudson* court found a sentence may be enhanced pursuant to § 2A2.2(b) where an aggravated assault is accomplished with an inherently dangerous weapon such as a gun. *Id.* at 506-07. Unlike an aggravated assault with a non-inherently dangerous weapon, an aggravated assault with an inherently dangerous weapon can be committed without the defendant automatically qualifying for an enhancement, such as where a gun is merely possessed during an assault. *Id.* Consequently, the Second Circuit concluded that no improper double counting occurs when the assault is committed with an inherently dangerous weapon. *Id.*

In the present case, Mr. Monroe urges us to follow the holding of *Hudson* to conclude the district court engaged in impermissible double counting. Mr. Monroe contends the bat, the knife, and the car were all non-inherently dangerous objects. Because these objects are not inherently dangerous, Mr. Monroe argues it was the *use* of these objects that made the offense an aggravated assault and it was the *use* of these objects that required a four-level enhancement of his offense

-14-

level.  Consequently, Mr. Monroe contends this two-fold upward adjustment constitutes impermissible double counting under *Hudson*.

Unfortunately for Mr. Monroe, it appears the Second Circuit is the only circuit that has held that enhancing a defendant's sentence under § 2A2.2(b)(2)(B) may constitute impermissible double counting.  In *United States v. Reese*, 2 F.3d 870, 895-96 (9th Cir. 1993), *cert. denied*, 510 U.S. 1094 (1994), the defendants argued the trial court had engaged in improper double counting by enhancing their sentences pursuant to § 2A2.2(b)(2).  In reviewing their contention, the Ninth Circuit stated  "there is nothing wrong with 'double counting' when it is necessary to make the defendant's sentence reflect the full extent of the wrongfulness of his conduct."  *Id.* at 895.  According to the court,

> the use of a single aspect of conduct both to determine the applicable offense guideline and to increase the base offense level mandated thereby will constitute impermissible double counting only where, absent such conduct, it is impossible to come within that guideline. If, on the other hand, it is possible to be sentenced under a particular offense guideline without having engaged in a certain sort of behavior, such behavior may be used to enhance the offense level, for in this situation, the guideline's base offense level will not necessarily have been set to capture the full extent of the wrongfulness of such behavior.

*Id.* at 895.  In applying these principles, the court noted that a defendant who commits an assault "with intent to commit another felony," will be sentenced under the aggravated assault guidelines, even if the defendant does not use a

dangerous weapon. *Id.* at 896. Because it was possible to be sentenced under § 2A2.2(a) without using a dangerous weapon, the court concluded that the enhancement of the defendants' sentences pursuant to § 2A2.2(b)(2)(B) was proper. *Id.*

Similarly, in *United States v. Williams*, 954 F.2d 204, 206 (4th Cir. 1992), the Fourth Circuit concluded the trial court did not engage in impermissible double counting by enhancing the defendant's sentence under § 2A2.2(b)(2)(B) for using a metal chair as a dangerous weapon. In reaching this conclusion, the court noted that because § 2A2.2(a) applies to assaults that "involved" a dangerous weapon, not all defendant's who are sentenced under § 2A2.2(a) will receive an enhancement for "use" of a dangerous weapon under § 2A2.2(b)(2)(B). *Id.* at 206-07. Furthermore, the court determined the dangerous weapon enhancement "rationally reflect[ed] the Guideline's graduated adjustment scheme," and promoted the "Guidelines' fundamental goal of proportionality in sentencing." *Id.* at 206-07. According to the Fourth Circuit, where an enhancement clearly applies to the conduct of an offense, such as the enhancement set forth in § 2A2.2(b)(2)(B), it "must be imposed unless the Guidelines expressly exclude its applicability." *Id.* at 207.

It appears the other circuits who have addressed the issue of whether the application of § 2A2.2(b)(2)(B) can amount to impermissible double counting have rejected *Hudson* and agreed with the Fourth and Ninth Circuits. *See Sorenson*, 58 F.3d at 1157, 1161 (no impermissible double counting where district court enhanced defendants' sentences under § 2A2.2(b)(2)(B) for using a "blunt instrument" during assault); *United States v. Garcia*, 34 F.3d 6, 11-12 (1st Cir. 1994) (no impermissible double counting where sentence enhanced under § 2A2.2(b)(2)(B) for using car during assault). We are aware of no circuit precedent, other than *Hudson*, to the contrary.

After thoroughly reviewing Mr. Monroe's arguments and all relevant authorities, we conclude *Hudson* was not well reasoned and we decline to follow the Second Circuit's decision. Although Mr. Monroe's "use" of the "dangerous weapons" in this case brought him within the aggravated assault guidelines and resulted in a four-level increase in his offense level, we do not believe the district court engaged in impermissible double counting for several reasons.

First, the plain language of the guidelines indicates Congress intended for double counting to occur under § 2A2.2. The Sentencing Guidelines are to be interpreted as if they were statutes or court rules and, in the absence of any

contrary intention, we must apply their clear and unambiguous terms. *United States v. Florentino*, 922 F.2d 1443, 1446 (10th Cir. 1990). Where the plain language of the guidelines requires the court to use a factor more than once in computing a defendant's sentence, the court is obligated to apply the guidelines as written. *Id.* at 1446-47 (guidelines required court to "count" defendant's prior convictions twice); *see also Williams*, 954 F.2d at 207 ("An adjustment that clearly applies to the conduct of an offense must be imposed unless the Guidelines expressly exclude its applicability."). Numerous provisions of the Guidelines expressly prohibit a court from adjusting a defendant's sentence based on a factor that was already taken into account in computing the defendant's offense level. *See*, *e.g.*, USSG § 3A1.1 comment. (n.2) (no vulnerable victim adjustment if offense guideline specifically incorporates this factor); USSG § 2X3.1 comment. (n.2) (adjustment for mitigating role "normally would not apply because an adjustment for reduced culpability is incorporated in the base offense level"). These provisions assure us "[t]he Sentencing Commission plainly understands the concept of double counting, and expressly forbids it where it is not intended." *Williams*, 954 F.2d at 208.

Section 2A2.2(a) of the Sentencing Guidelines provides for a base offense level of 15 for a defendant who commits assault with a dangerous weapon with

intent to do bodily harm. Section 2A2.2(b)(2)(B) requires a four-level enhancement for the use of a dangerous weapon. Thus, the clear and unambiguous language of § 2A2.2 requires the very double counting of which Mr. Monroe complains. *Reese*, 2 F.3d at 894. If the Sentencing Commission had intended to prohibit double counting under § 2A2.2, we believe it would have so provided, as it has in other sections of the guidelines. Having chosen not to do so, the Sentencing Commission illustrated its intent to require double counting under § 2A2.2. Because the double counting was intended, it is permissible.[5]

Second, we believe applying § 2A2.2 in accordance with its plain language furthers the Sentencing Commission's goal of proportionality in sentencing. *See Williams*, 954 F.2d at 207. The Sentencing Guidelines were enacted to achieve "proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity." USSG, Ch. 1, Pt. A, intro. comment. 3. "When more than one kind of harm is attributable to a given aspect of a defendant's conduct, failure to enhance [a defendant's] punishment for each harm caused thereby [defeats] the Commission's goal of

---

[5] We note § 2A2.2 provides absolutely no support for *Hudson's* determination that courts should distinguish between weapons that are non-inherently dangerous and those that are inherently dangerous and apply the four-level enhancement only to the latter.

-19-

proportionality in sentencing." *Reese*, 2 F.3d at 895.

Section 2A2.2(b)(2) sets forth a rationale graduated adjustment schedule that is based on the degree of involvement of the dangerous weapon in an aggravated assault. If we were to conclude application of § 2A2.2(b)(2)(B) amounts to impermissible double counting under *Hudson*, we would render the adjustment schedule irrational and would effectively undermine the Commission's goal of proportionality in sentencing. Under the logic of *Hudson*, a defendant who discharged a firearm in the course of an assault, but missed the victim, would receive a five-level adjustment pursuant to § 2A2.2(b)(2)(A). However, a defendant who severely beat a victim with a chair would receive no adjustment under § 2A2.2(b)(2)(B), because such adjustment would amount to impermissible double counting. The logic of such a rationale escapes us, and we refuse to adopt it. Because we believe § 2A2.2(b) sets forth a rational adjustment scheme that furthers the Sentencing Commission's goal of proportionality in sentencing, we believe the district court acted properly in applying the plain language of the provision.

Furthermore, we find that *Hudson* should not be followed because it creates a difficult standard for courts to apply. Under *Hudson*, the court must always

determine whether an object is inherently dangerous before deciding whether § 2A2.2(b) applies. While this task may be relatively simple when the object involved is a gun or a chair, it becomes quite arduous when the court is dealing with objects such as a knife and a car -- two of the "weapons" involved in this very case. Thus, we find *Hudson* creates more problems than it solves. Not only is the *Hudson* test difficult to apply, but we believe it is likely to lead to inconsistent and arbitrary results. By rejecting *Hudson*, we ensure that all defendants who commit an assault with a dangerous weapon are treated the same, thus furthering the Sentencing Commission's goal of proportionality in sentencing.

Finally, as noted by the Ninth Circuit in *Reese*, *see* 2 F.3d at 895-97, the district court in this case did not engage in impermissible double counting because it is possible to be sentenced under § 2A2.2(a) without receiving an enhancement under § 2A2.2(b).

> If ... it is possible to be sentenced under a particular offense guideline without having engaged in a certain sort of behavior, such behavior may be used to enhance the offense level, for in this situation, the guideline's base offense level will not necessarily have been set to capture the full extent of the wrongfulness of such behavior.

*Id*. at 895. Here, a defendant who commits an assault with the intent to commit another felony comes within the aggravated assault guideline. USSG § 2A2.2

comment. (n.1).  It is therefore possible to come within the aggravated assault guidelines without using a dangerous weapon and without automatically qualifying for an enhancement under § 2A2.2(b).  Consequently, the district court's application of § 2A2.2(b)(2)(B) in this case does not amount to impermissible double counting.

Based on the foregoing reasons, we conclude:  (1) Mr. Monroe and Mr. Duran were not entitled to lesser included offense instructions concerning the crime of beating, striking or wounding, and (2) the district court did not err in enhancing Mr. Monroe's sentence pursuant to USSG § 2A2.2(b)(2)(B).  Mr. Monroe's and Mr. Duran's convictions and sentences are **AFFIRMED**.