**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 15, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JOSE AUGUSTIN PLUMA,

      Defendant - Appellant.

No. 11-1402
(D.C. No. 1:09-CR-00301-JLK-2)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **MATHESON**, Circuit Judge, and **JOHNSON,** District Judge.[†]

On December 29, 2008, several inmates of the Federal Correctional Institution ("FCI") in Florence, Colorado, severely beat another inmate, leading to his death. For his role in the events, Jose Pluma was tried and convicted of one count of conspiracy, one

---

    * This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

    † The Honorable William P. Johnson, United States District Judge for the District of New Mexico, sitting by designation.

count of aiding and abetting second degree murder,[1] and one count of possession of contraband in prison. He appeals, arguing that the district court erred by refusing to instruct the jury on involuntary manslaughter as a lesser-included offense. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

On December 29, 2008, Captain Russell Krist at the FCI responded to an incident in cell 408. He found "blood from ceiling to floor" and the dead body of Pablo Zuniga-Garcia under a mattress. ROA, Vol. II at 421. The medical examiner could not attribute Mr. Zuniga-Garcia's death to any single injury but testified that multiple blows to Mr. Zuniga-Garcia's head led to his death. Video footage from the FCI showed four inmates rushing into Mr. Zuniga-Garcia's cell on the morning of December 29, 2008.

Mr. Pluma was charged with conspiracy to assault Mr. Zuniga-Garcia, in violation of 18 U.S.C. § 371; aiding and abetting second degree murder, in violation of §§ 1111(a) and 2(a); and possession of contraband in prison, in violation of §§ 1791(a)(2) and (b)(3).

Two of the inmates involved in the attack, Rafael Alvarado and Francisco Vazquez-Duran, cooperated with the Government and testified that they met with Justin

---

[1] The superseding indictment charged Mr. Pluma and the other defendants with second degree murder and aiding and abetting in the offense. Because the jury was properly instructed on liability as a principal and on aiding and abetting, we may interpret that Mr. Pluma was convicted as either a principal or an aider/abettor. *United States v. Langston*, 970 F.2d 692, 705 (10th Cir. 1992). The identity of the principal need not be established to convict aiders and abettors. *United States v. Harper*, 579 F.2d 1235, 1239 (10th Cir. 1978).

Hernandez, the leader of the Sureños gang at the FCI, the night before the attack. Mr. Hernandez ordered the assault on Mr. Zuniga-Garcia, a fellow member of the Sureños. Mr. Alvarado testified that he entered Mr. Zuniga-Garcia's cell on December 29 with Mr. Pluma, Mr. Vazquez-Duran, and a fourth inmate, Daniel Morones. He testified that all four of them beat Mr. Zuniga-Garcia with belts and padlocks. Mr. Alvarado testified that, after the assault, he and Mr. Vazquez-Duran left the cell while Mr. Morones and Mr. Pluma stayed behind. Mr. Vazquez-Duran corroborated Mr. Alvarado's story.

Mr. Pluma was tried and convicted of all counts. Mr. Morones was tried separately and also convicted on the same three counts as Mr. Pluma. Three other participants in the events—Justin Hernandez, Juan Martin Ruelas, and Mark Rosalez— were charged with one count of conspiracy and one count of aiding and abetting second degree murder and were tried with Mr. Pluma. All three were convicted on both charges.

Mr. Pluma was sentenced to 60 months of imprisonment for the conspiracy conviction, 60 months for the contraband conviction, and 420 months for the second-degree murder conviction, to run concurrently. He argues on appeal that the district court erred when it failed to instruct the jury on involuntary manslaughter, a lesser-included offense to second degree murder.

## II. DISCUSSION

Before trial, Mr. Pluma submitted a proposed lesser-included offense instruction for involuntary manslaughter, arguing that he did not intend to kill Mr. Zuniga-Garcia and that his conduct was at most misdemeanor assault, making involuntary manslaughter

under 18 U.S.C. § 1112(a) an appropriate instruction. *Id.* ("[Involuntary m]anslaughter is the unlawful killing of a human being without malice . . . [i]n the commission of an unlawful act not amounting to a felony.").

After both sides had presented their evidence at trial, the district court heard argument on the jury instruction issue. At the hearing, the Government argued that Mr. Pluma's assault of Mr. Zuniga-Garcia was not a simple misdemeanor assault because it resulted in "serious bodily injury," making it a felony. ROA, Vol. II at 3520. Involuntary manslaughter therefore did not "conform with the evidence placed before the jury." *Id.* at 3521. The district court agreed and refused to give the instruction. On appeal, Mr. Pluma argues that this case involved "an assault that went bad" and that a reasonable jury could have concluded that Mr. Pluma limited his blows to the torso and body and thus was not responsible for second degree murder but only for involuntary manslaughter. Aplt. Br. at 8.

## A. *Standard of Review and Lesser-Included Offense Instruction Requirements*

Whether an offense for which an instruction is sought is a lesser-included offense is a legal question that we review de novo. *United States v. Pearson*, 203 F.3d 1243, 1270 (10th Cir. 2000). But we review the district court's decision as to whether there is enough evidence to justify the instruction for abuse of discretion. *Id.*; *see also United States v. Brown*, 287 F.3d 965, 974 (10th Cir. 2002) ("A defendant is entitled to the instruction even if the evidence supporting it is weak.").

-4-

A defendant is entitled to an instruction on lesser-included offenses if

> (1) he made a proper request; (2) the lesser included offenses included some but not all of the elements of the offense charged; (3) the elements differentiating the lesser included offenses from the charged crime are in dispute; and (4) *a jury could rationally convict the defendant of one of the lesser offenses and acquit him of the greater offense*.

*Pearson*, 203 F.3d at 1270 (emphasis added); *see also Keeble v. United States*, 412 U.S. 205, 208 (1973) ("[T]he defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater."); *Richie v. Workman*, 599 F.3d 1131, 1135-36 (10th Cir. 2010). "The court is not required to provide the requested instruction unless all four of these factors have been satisfied." *United States v. Duran*, 127 F.3d 911, 915 (10th Cir. 1997).

### B. *Evidence*

At trial, the Government presented witness testimony that Mr. Pluma and other FCI inmates conspired to assault Mr. Zuniga-Garcia on December 29, 2008. The Government also presented Mr. Zuniga-Garcia's death certificate and the testimony of the forensic pathologist who autopsied his body, both of which stated that Mr. Zuniga-Garcia died because of head injuries from the December 29 assault.

Multiple trial witnesses identified Mr. Pluma as a member of the Sureños gang that conspired to assault Mr. Zuniga-Garcia. These witnesses included several employees and inmates of the FCI as well as Mr. Pluma's co-conspirators, Mr. Alvarado and Mr.

Vazquez-Duran, who provided the most detailed information about Mr. Pluma's involvement in the conspiracy.

Mr. Alvarado and Mr. Vazquez-Duran testified that Mr. Pluma was part of the planned assault. Both stated that Mr. Pluma joined them and Mr. Morones in arming themselves with padlocks attached to belts and going to Mr. Zuniga-Garcia's cell with the intent to beat him with the locks. According to the testimony, Mr. Pluma hit Mr. Zuniga-Garcia in the face, neck, and head with his belt and padlock and jumped and stomped on Mr. Zuniga-Garcia's leg.

The witnesses testified that Mr. Pluma and Mr. Morones were the first two inmates to enter the cell and the last two attackers left in the cell after Mr. Alvarado and Mr. Vazquez-Duran determined that the beating had gone on long enough and exited. Mr. Vazquez-Duran added that Mr. Pluma continued to beat Mr. Zuniga-Garcia after Mr. Vazquez-Duran told everyone to stop.

In addition to the testimony of Mr. Alvarado and Mr. Vazquez-Duran, the Government presented a video of the four attackers entering and leaving Mr. Zuniga-Garcia's cell. Mr. Alvarado and Mr. Vazquez-Duran identified Mr. Pluma as one of the four attackers in the video.

Another FCI inmate testified to seeing Mr. Pluma coming and going between the conspirators' cell and Mr. Zuniga-Garcia's cell. And inmates and FCI employees testified that they witnessed Mr. Pluma covered in blood and bearing several injuries that appeared to be related to the attack.

## C. *Analysis*

Mr. Pluma satisfies the first three elements of the test for providing lesser-included jury instructions. First, he made a proper request for the instruction. Second, involuntary manslaughter is a lesser-included offense of second degree murder. *Brown*, 287 F.3d at 974. Third, the elements differentiating involuntary manslaughter and second degree murder are the commission of a misdemeanor and a felony, respectively. These elements are in dispute: Mr. Pluma claims that the assault was merely a misdemeanor, consistent with involuntary manslaughter, while the Government claims it was a felony.[2]

Mr. Pluma's involuntary manslaughter instruction argument fails on the fourth element of the test. The district court was not required to present the jury instruction unless a rational jury could have convicted Mr. Pluma of involuntary manslaughter and acquitted him of second degree murder. *Pearson*, 203 F.3d at 1270; *Duran*, 127 F.3d at 915. The district court determined that there was no rational basis upon which a jury could have come to that conclusion. We review the district court's determination for abuse of discretion and conclude there was no such abuse.

The testimony of Mr. Alvarado and Mr. Vasquez-Duran showed that Mr. Pluma beat Mr. Zuniga-Garcia on the head with a padlock attached to a belt. The forensic

---

[2] Mr. Pluma also claims he lacked the requisite mens rea for felony assault or second degree murder, but "[i]t is not necessary that defendant have assaulted the victim with the intent to do serious bodily harm—the resulting serious bodily injury coupled with the general intent to assault is sufficient to satisfy the elements of the felony." *United States v. Benally*, 146 F.3d 1232, 1237 (10th Cir. 1998).

-7-

pathologist testified that Mr. Zuniga-Garcia died of bodily injuries from the December 29 assault. The evidence did not support a jury instruction on involuntary manslaughter.

Involuntary manslaughter is the "unlawful killing of a human being without malice . . . [i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." 18 U.S.C. § 1112(a). Assault with a dangerous weapon and assault resulting in serious bodily injury are both felony assaults. *Id.* §§ 113(a)(3), (6) (stating that both assault with a "dangerous weapon" and assault "resulting in serious bodily injury" are felonies punishable by a fine or imprisonment of up to 10 years); *see also United States v. Tissnolthtos*, 115 F.3d 759, 763 (10th Cir. 1997) (defining assault with a deadly weapon for sentencing purposes). Both forms of felonious assault occurred here.

First, as for assault with a dangerous weapon, a dangerous weapon is "an instrument capable of inflicting death or serious bodily injury." *Id.* When such an object is possessed or displayed during an assault, we treat it as an aggravated, felonious assault. *Id.* This court has held that many objects can constitute dangerous weapons. *See, e.g., United States v. Farrow*, 277 F.3d 1260, 1265 (10th Cir. 2002) (holding that the defendant's concealment of his hand during a robbery to give the impression that he possessed a dangerous weapon was sufficient to trigger a sentence enhancement for possession of a dangerous weapon); *Tissnolthtos*, 115 F.3d at 763 (holding that a piece of firewood qualifies as a dangerous weapon for sentencing purposes; "'[C]ourts have found

-8-

that, in the proper circumstances, almost anything can count as a dangerous weapon, including walking sticks, leather straps, rakes, tennis shoes, rubber boots, dogs, rings, concrete curbs, clothes irons, and stink bombs.'" (alteration in original) (quoting *United States v. Dayea*, 32 F.3d 1377, 1379 (9th Cir. 1994))); *United States v. Bruce*, 458 F.3d 1157, 1159 (10th Cir. 2006) (weights and weight bench used as dangerous weapons).

If a piece of firewood and weights are capable of being dangerous weapons, surely a padlock attached to a belt is also "an instrument capable of inflicting death or serious bodily injury." *Tissnolthtos*, 115 F.3d at 763. Even if Mr. Pluma did nothing more than hit Mr. Zuniga-Garcia once, he committed a felony assault. Based on the evidence, no rational jury could have concluded that Mr. Pluma committed involuntary manslaughter and not second degree murder because involuntary manslaughter cannot occur during the commission of a felony. 18 U.S.C. § 1112(a).

Second, assault resulting in serious bodily injury is felony assault under 18 USC § 113(a)(6). Section 1365 explains that a "serious bodily injury" is a "bodily injury" involving "substantial risk of death . . . extreme physical pain . . . protracted and obvious disfigurement . . . or protracted loss or impairment of the function of a bodily member, organ, or mental faculty." 18 USC § 1365 (defining "bodily injury" to include "a cut, abrasion, bruise, burn, or . . . any other injury to the body, no matter how temporary.")

We have held that assaults resulting in injuries far less serious than death were "serious bodily injuries." *See United States v. Tindall*, 519 F.3d 1057, 1064 (10th Cir. 2008) (holding that a life-threatening arterial laceration to the victim's head was a serious

-9-

bodily injury); *Tissnolthtos*, 115 F.3d at 763 (putting out someone's eye by throwing a projectile is a serious bodily injury); *United States v. Mutte*, 424 F. App'x 765, 767 (10th Cir. 2011) (breaking the victim's ankle is a serious bodily injury).[3] We also have held that, if the jury in a case believes that an assault contributed to the victim's death, the underlying assault necessarily caused serious bodily injury. *United States v. Benally*, 146 F.3d 1232, 1238 (10th Cir. 1998). There is no question that the assault of Mr. Zuniga-Garcia was the cause of his death, as testified by the forensic pathologist. In addition, the pathologist found that Mr. Zuniga-Garcia had bruises, contusions, and incisions on his torso and legs and a fractured bone in his hand. Even assuming Mr. Pluma did not strike the blow that killed Mr. Zuniga-Garcia, the evidence is sufficient to show that his assault caused Mr. Zuniga-Garcia serious bodily injury.

Finally, if Mr. Pluma's assault of Mr. Zuniga-Garcia were merely a misdemeanor, he still would not be entitled to a jury instruction on involuntary manslaughter. Under 18 U.S.C. § 2(a), "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." The superseding indictment charged Mr. Pluma with "intentionally aiding and abetting" Mr. Morones, Mr. Alvarado, and Mr. Vazquez-Duran "in the commission of" second degree murder. By assisting in the assault of Mr. Zuniga-Garcia, during which Mr. Zuniga-Garcia was repeatedly hit on the head leading to his death, Mr. Pluma is guilty of

_____

[3] Although this unpublished opinion is not binding precedent, it is persuasive. Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

second degree murder as an aider or abettor even if he did not hit Mr. Zuniga-Garcia on the head. At the very least, he aided the attacker who murdered Mr. Zuniga-Garcia. No rational jury could therefore conclude that Mr. Pluma committed involuntary manslaughter and not second degree murder.

## III.    CONCLUSION

Because we find that no rational jury could have convicted Mr. Pluma of involuntary manslaughter and acquitted him of second degree murder, we affirm. The district court did not abuse its discretion by refusing the instruction.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge